IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                  No. 24-CR-31-KWR

MARLANDO LUIS MARTINEZ,

    Defendant.

**OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART
DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT**

  THIS MATTER comes before the Court on Defendant Marlando Luis Martinez's objections to the Presentence Report (PSR). Doc. 36. Defendant raises four objections: (1) Defendant objects to the factual summary under the Offense Conduct section of the PSR, Doc. 38 at ¶¶ 14–16; (2) Defendant objects to certain offender characteristic information, Doc. 38 at ¶ 68 (PSR), recounting four dismissed pro se domestic violence and child custody petitions; (3) Defendant objects to a cross-reference assessed under USSG §§ 2K2.1(c)(1)(A), 2A2.1 (attempted murder), Doc. 38 at ¶¶ 21, 27, because the facts do not support a finding of a specific intent to kill; and (4) Defendant objects to a two-point enhancement, Doc. 38 at ¶ 34, assessed under USSG § 3A1.3 for "restraint of victim." Doc. 36 at 2–9.

  The Court held a sentencing hearing on March 3, 2025, to consider exhibits and argument from the parties. At this hearing, the Court reserved its ruling on Defendant's objections. After reviewing the parties' arguments and the applicable law, the Court **OVERRULES** Objections 1 and 4 and **SUSTAINS** Objections 2 and 3.

1

## BACKGROUND

In January 2024, Defendant Marlando Luis Martinez was indicted for two counts of felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and 924. Doc. 2 (redacted indictment). In October 2024, Defendant entered into a plea agreement, pleading guilty to two counts of being a felon in possession of a firearm and ammunition. Doc. 31 at 2.

The PSR objections discussed below stem from a domestic incident occurring between Defendant and S.E. (his pregnant partner). On August 13, 2023, deputies were dispatched to a home after an emergency call from a third-party reporting that a female (S.E.) was at her residence requesting help. Doc. 38 at ¶ 14. When the police arrived, the police observed that S.E. was "wearing little clothing, was barefoot, and appeared to be distraught," and were told by S.E. that Defendant had threatened and physically assaulted her. Doc. 38 at ¶¶ 14–16. S.E. also told police that Defendant had discharged a firearm after pointing it at her head and threatening to kill her. Doc. 38 at ¶ 15. S.E. later refused to cooperate with authorities or otherwise press charges. While executing a search warrant of Defendant's residence, the police discovered a bullet-hole in the headboard. Doc. 38 at ¶ 18. The police also discovered the weapons underlying the felon in possession charges. Doc. 38 at ¶ 18.

## DISCUSSION

### I. Legal Standard

A federal sentence must be procedurally and substantively reasonable. *See United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008). "A sentence is procedurally unreasonable if the district court incorrectly calculates or fails to calculate the Guidelines sentence, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, relies on clearly erroneous facts, or inadequately explains the sentence." *Id*. (citing *Gall v. United States,* 552 U.S. 38, 50–51

(2007)). Procedural reasonableness also requires a district court to "afford the defendant his rights under the Federal Rules of Criminal Procedure." *See United States v. Martinez-Barragan,* 545 F.3d 894, 898 (10th Cir.2008) (quoting *United States v. Geiner,* 498 F.3d 1104, 1107 (10th Cir.2007)) (cleaned up).

When any portion of the PSR is "disputed," a sentencing court's fact-finding obligation is triggered and must either "rule on the dispute" or "determine that a ruling is unnecessary." Fed. R. Crim. P. 32(i)(3)(B); *United States v. Chee*, 514 F.3d 1106, 1114–15 (10th Cir. 2008). A ruling is unnecessary "either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). "[A] defendant does not 'dispute' a PSR's recitation of facts underlying his arrests unless he presents 'information to cast doubt on' the facts." *United States v. Warren*, 737 F.3d 1278, 1285–86 (10th Cir. 2013) (citing *United States v. Yates,* 22 F.3d 981, 989 (10th Cir.1994)); *see also United States v. McDonald*, 43 F.4th 1090, 1096 (10th Cir. 2022) (explaining that the district court's Rule 32 fact-finding obligation was not invoked because "[t]he majority of [the defendant's] objections to the facts contained in the PSR contend only that the source of the information was not credible or reliable, but they do not claim that the facts contained in the report are untrue").

A defendant has an "affirmative duty to make a showing that the information in the PSR was unreliable *and articulate the reasons why the facts contained therein were untrue or inaccurate*." *See McDonald*, 43 F.4th at 1096 (quoting *Chee*, 514 F.3d at 1115) (emphasis in original). "Attacking a witness's credibility or reliability is different than asserting that their statements or information are false." *Id.* at 1097. "If a PSR is *not* disputed in this fashion, it is well established that a district court is free to rely on the PSR at sentencing." *Warren*, 737 F.3d at 1286 (emphasis in original); *see also United States v. Tindall*, 529 F.3d 1057, 1064 (10th Cir. 2008).

3

Where PSR facts are in dispute, the government carries the burden to prove disputed facts by a preponderance of the evidence. *See Tindall*, 529 F.3d at 1063. "The district court may base its findings of fact at sentencing on evidence presented at trial, undisputed statements in the PSR, and evidence presented at the sentence hearing." *United States v. White*, 663 F.3d 1207, 1216 (11th Cir. 2011). "[D]ue process requires that the information used [to support a sentencing enhancement] have some minimal indicium of reliability beyond mere allegation." *United States v. Beaulieu*, 893 F.2d 1177, 1181 (10th Cir. 1990) (citation and internal quotations omitted); *see also United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013) ("Corroborating evidence is often key to determining whether a statement is sufficiently reliable.").

**II.     Analysis**

Defendant raises four objections to the PSR: (1) Defendant objects to the factual summary under the Offense Conduct section of the PSR, Doc. 38 at ¶¶ 14–16; (2) Defendant objects to certain offender characteristic information, Doc. 38 at ¶ 68, recounting four dismissed pro se domestic violence and child custody petitions; (3) Defendant objects to a cross-reference assessed under USSG §§ 2K2.1(c)(1)(A), 2A2.1 (attempted murder), Doc. 38 at ¶¶ 21, 27, because the facts do not support a finding of a specific intent to kill; and (4) Defendant objects to a two-point enhancement, Doc. 38 at ¶ 34, assessed under USSG § 3A1.3 for "restraint of victim." Doc. 36 at 2–9. For the reasons discussed below, the Court overrules Objections 1 and 4, *see infra* sections A & D, and sustains Objections 2 and 3, *see infra* sections B & C.

   A.   <u>Objection 1: Overruled</u>

Defendant denies and objects to the factual summary under the Offense Conduct section, Doc. 38 at ¶¶ 14–16, recounting the altercation between himself and S.E. on August 13, 2023, because the "PSR's recitation of the offense conduct is based nearly entirely on unsubstantiated

4

hearsay statements by a single witness" and lacks corroborating evidence. Doc. 36 at 2. This objection is without merit.

First, Defendant did not trigger the Court's fact-finding obligation under Federal Rule of Criminal Procedure 32 because he did not properly dispute the PSR, and as a result, the Court can rely on the PSR in its current form. *See Warren*, 737 F.3d at 1285–86 ("[A] defendant does not 'dispute' a PSR's recitation of facts underlying his arrests unless he presents 'information to cast doubt on' the facts."); *McDonald*, 43 F.4th at 1096. Here, Defendant does not present any information to cast doubt on the facts and instead simply states the legal rule that information must have sufficient indicia of reliability to be considered by the Court at sentencing. *See* Doc. 36 at 2–3.

Second, even if the Court's fact-finding obligation is triggered, the Court finds that the United States has proven by a preponderance of the evidence that the facts contained in the objected-to paragraphs occurred. *See Tindall*, 529 F.3d at 1063. It is not material that the information is hearsay; the question is only whether the statements made are sufficiently reliable. *See Beaulieu*, 893 F.2d at 1181 ("[R]eliable hearsay . . . may be used at sentencing to determine the appropriate punishment."). And here, the hearsay statements elicited from S.E. (which are recounted in paragraphs 14–16) are sufficiently reliable. In the bodycam footage, S.E. was visibly distraught. *See* Ex. 1. This indicates that S.E. was still under considerable stress from the trauma experienced hours prior when speaking with the responding office. *See generally* Fed. R. Evid. 803(1) (present sense impression: a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it), 803(2) (excited utterance: a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused). And while Defendant testified that S.E. was using large quantities of

fentanyl on the night of the incident, she did not appear to be heavily intoxicated or disoriented when making statements to the responding officer. *See* Ex. 1. To the contrary, S.E. was relatively detailed and consistent when explaining the events that unfolded earlier that morning.

S.E.'s contemporary statements are also corroborated by additional reliable evidence recounted in undisputed portions of the PSR. *See White*, 663 F.3d at 1216 ("The district court may base its findings of fact at sentencing on . . . undisputed statements in the PSR . . . ."); *Ruby*, 706 F.3d at 1229 ("Corroborating evidence is often key to determining whether a statement is sufficiently reliable."). The responding officers physically observed S.E.'s condition: "When deputies arrived, they made contact with the victim, S.E., who was wearing little clothing, was barefoot, and appeared to be distraught" and observed "visible marks consistent with the type of weapon described [(*i.e.*, the whip)] on her arms and legs." Doc. 38 at ¶ 14. S.E.'s account is also corroborated by the police discovering firearms in the house and a bullet-hole in the headboard along with a projectile in the bedroom. Doc. 38 at ¶ 18. S.E.'s belief that her life was threatened is corroborated by the 911 call coming from an unrelated third-party at the third-party's residence. Doc. 38 at ¶ 14. S.E. also told the third-party that she was being beaten by and was fleeing from Defendant. Ex. 1 at 0:10–0:20. Moreover, other portions of the PSR show a pattern of similarly violent conduct: It includes a prior conviction for a domestic violence crime involving strangulation and suffocation, Doc. 38 at ¶ 41, and two other domestic violence actions dismissed because the victim (also S.E.) was (as here) uncooperative, Doc. 38 at ¶¶ 51–52.

B.  Objection 2: Sustained

Defendant denies and objects to offender characteristic information, Doc. 38 at ¶ 68, recounting four dismissed pro se domestic violence and child custody petitions. Doc. 36 at 3. Specifically, Defendant notes that the "cases were all dismissed without an adjudication on the

6

merits . . . [or any] finding of fact by any court," there was "[no] evidentiary hearing of any kind . . . held in any of the cases prior to dismissal," and there is no other evidence corroborating the allegations therein. Doc. 36 at 3.

The Court sustains this objection and will not otherwise consider the objected-to paragraph during sentencing because the information lacks sufficient indicia of reliability to be considered. Though the United States explains that "the petition filed by S.E.'s parents was filed under penalty of perjury, and the Court ultimately granted the kinship request," Doc. 41 at 6, it does not provide copies of the requests or court orders. As a result, the Court is unable to assess its reliability or substantiate its contents.

### C. Objection 3: Sustained

Defendant objects to the recommended cross-reference assessed under USSG § 2K2.1(c)(1)(A), § 2A2.1 (attempted murder), PSR ¶¶ 21, 27. Doc. 36 at 3–5. The guideline for a violation of 18 U.S.C. § 922(g)(1) is USSG § 2K2.1. Under § 2K2.1(c)(1)(A), courts should cross reference to USSG § 2X1.1 (attempt, solicitation, or conspiracy) "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction with the commission or attempted commission of another offense," and should apply the level from that offense "if the resulting offense level is greater than that determined above." § 2X1.1(a) directs courts to apply "[t]he base offense level from the guideline for the substantive offense." The PSR turned to § 2A2.1 (assault with intent to commit murder; attempted murder), which has a base offense level of 27, and asserts paragraph 21 as the factual basis for the cross reference. Defendant does not dispute the asserted factual basis in paragraph 21, and instead challenges the legal sufficiency of the facts; he argues that the facts do not support a cross reference because it does not support a finding of a specific intent to kill. *See* Doc. 36 at 3–5.

The Court sustains Defendant's objection to the cross-reference. "[A] defendant can . . . be sentenced under § 2A2.1 [only] if he intended to kill." *United States v. Brooks*, 67 F.4th 1244, 1253 (10th Cir. 2023). As a result, applying the cross-reference here requires a finding that Defendant had a specific intent to kill. *See id.* at 1248–50. "A killing is committed with the requisite specific intent if it is 'willful, deliberate, malicious, and premeditated.'" *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000) (citing 18 U.S.C. § 1111(a)); *see also Brooks*, 67 F.4th at 1249 ("[M]alice demonstrated by reckless and wanton conduct is insufficient." (citation omitted)). "[T]he specific intent to kill . . . can be established by circumstantial evidence." *United States v. Brooks*, 128 F.4th 1369, 1373 (10th Cir. 2025) (noting that "firing a gun at another can support an inference of an intent to kill." (citation and internal quotations omitted)).

Here, while it is clear Defendant (recklessly) fired a weapon in his bedroom, the evidence before the Court does not clearly establish that Defendant fired a weapon at S.E with a specific intent to kill. On one hand, S.E. stated to the responding officer that Defendant "pulled a gun out on [her] and shot at [her] face." Ex. 1 at 0:55–1:00; 2:35–2:45. On the other hand, Defendant later testified that he fired the weapon in a fit of rage but did not point the gun at S.E. or otherwise try to kill her. Moreover, while S.E.'s statements recounting physical abuse are corroborated by physical evidence and observations from the responding officers, little else corroborates that Defendant specifically intended to kill S.E. when he fired the weapon. To the contrary, the fact that Defendant fired a single shot could suggest that he never formed the requisite intent. *Cf. Brooks*, 128 F.3d at 1373 (finding a specific intent to kill where the defendant "fired several rounds in [the victim's] direction").

8

D.  Objection 4: Overruled

Defendant objects to a two-point enhancement, Doc. 38 at ¶ 34, assessed under USSG § 3A1.3 for "restraint of victim." Doc. 36 at 6. This section states, "[i]f a victim was physically restrained in the course of the offense, increase by 2 levels." USSG § 3A1.3. Defendant does not dispute the underlying facts and instead argues that he did not "restrain" S.E. as a matter of law because "[a]ny holding of S.E. was extremely brief, and incidental to the physical altercation that allegedly occurred that day," and "there is no evidence that [Defendant's] holding of S.E. prevented [her] from . . . escaping the encounter or otherwise restricted her freedom of movement beyond that inherent in any physical scuffle." *See* Doc. 36 at 8. The United States argues that S.E. was physically restrained because Defendant's physical violence and threats about leaving "demonstrate that S.E. stayed in the house out of fear of further harm." *See* Doc. 41 at 7–8.

The Court overrules Defendant's objection and finds that he physically restrained the victim, S.E., during the offense. The sentencing guidelines define "physically restrained" as "the forcible restraint of the victim such as by being tied, bound, or locked up." USSG § 1B1.1 (application notes). But this list is not exhaustive:

> [The Tenth Circuit] has adopted the plain meanings of "forcible" and "restraint" to further interpret this definition, determining "forcible" means the "use of physical force or another form of compulsion to achieve the restraint" and "restraint" means "the defendant's conduct must hold the victim back from some action, procedure, or course, prevent the victim from doing something, or otherwise keep the victim within bounds or under control."

*United States v. Walker*, 74 F.4th 1183, 1196 (10th Cir. 2023) (citing *United States v. Checora*, 175 F.3d 782, 790–91 (10th Cir. 1999)); *see also United States v. Roberts*, 898 F.2d 1465, 1470 (10th Cir. 1990) (explaining that "a victim who is held around the neck at knifepoint is denied freedom of movement so as to be physically restrained"). And "§3A1.3 applies even when the physical

restraint was 'brief.'" *Walker*, 74 F.4th at 1196 (citing *Checora*, 175 F.3d at 792). Moreover, "[p]hysical restraint is not limited to physical touching of the victim." *See United States v. Fisher*, 132 F.3d 1327, 1329–30 (10th Cir. 1997) ("*Keeping someone from doing something* is inherent within the concept of restraint, and in this case one coconspirator deliberately kept the security guard at bay by pointing a gun directly at his head while two others looted the teller counter." (emphasis original)).

As discussed *supra* section A, S.E.'s contemporaneous statements regarding Defendant's conduct made to officers and included in the investigative report are sufficiently reliable to be considered. And to reiterate, here, Defendant does not challenge the facts themselves, but instead challenges the enhancement's legal sufficiency; this does not trigger the Court's fact-finding obligation. *See McDonald*, 43 F.4th at 1097 ("This Court has already held that objections must dispute the underlying facts and not the inferences to be drawn from those facts . . . , or the ultimate legal conclusions to be drawn from those facts." (citations omitted)).

Defendant's actions prevented and otherwise delayed S.E. from leaving the house, and even if the physical incidents were brief, kept S.E. within bounds or under his control. *See Walker*, 74 F.4th at 1196–97 ("[T]his court has not relied on the length or severity of the restraint to determine [whether] a physical restraint occurred."). Defendant choked, struck, and whipped her repeatedly. Doc. 38 at ¶ 15; Ex. 1 at 2:30–3:05. This harm levied against S.E., and the threat of additional harm against her and her unborn child, likely restrained S.E. from leaving; his past harm and threats were, in effect, like pointing a gun in her direction or holding a knife at her throat. *See Fisher*, 132 F.3d at 1329–30; *Roberts*, 898 F.2d at 1470. That S.E.'s flight was restrained is also corroborated by the fact that, when she finally left the residence, she was wearing little clothing, was barefoot, and fled the residence in the morning around seven hours after she was first assaulted, Doc. 38 at

10

¶ 14; S.E.'s abrupt and urgent flight suggests acute fear and desperation and that she perceived her escape-window to be narrow and uncertain. In short, even if Defendant did not physically prevent S.E. from fleeing, his conduct (which included physical violence) caused significant fear of harm that qualifies as physical restraint.

## CONCLUSION

Accordingly, the Court overrules Objections 1 and 4 and sustains Objections 2 and 3 to the presentence report. The Court directs the United States Probation Office to calculate a new sentencing guidelines range that conforms with this Order and to submit an addendum to the presentence report before the sentencing hearing.

It is **SO ORDERED**.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE